UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 ELSAYED KAZEM SAFIEDINE a/k/a "Tom",

D-2 MARY FAWAZ,

    Defendants.
_____/

Case No. 08-20148-2

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_June 7, 2012.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

After a jury trial held during September 2011, Defendants Elsayed Kazem Safiedine and Mary Fawaz were each convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  Defendants have each moved for a judgment of acquittal, or in the alternative, for a new trial, and these motions are presently before the Court.  These matters have been fully briefed, and the Court heard oral argument on May 14, 2012.  For reasons set forth below, the Court denies Defendants' motions.

### I. Background

The indictment in this case alleged that Defendants conspired to obstruct and impede the assessment and collection of income taxes by the Internal Revenue Service ("IRS"). This case involves a number of business entities: JSC Corporation ("JSC"), MTK Family Investments, and a Michigan partnership named MTK & KLC. These entities owned and operated gas stations in the metro Detroit area.

At trial, the government introduced testimony indicating that Defendants' actions in connection with the sale of a gas station led to the understatement of income in tax returns filed with the IRS. Witnesses also testified that income was understated as a result of Defendants' concealment of certain checks issued to JSC by Sunoco, Inc. ("Sunoco").

After the government concluded its case-in-chief, Defendants each reserved the right to move for a judgment of acquittal. The Court indicated that Defendants' motions would be considered timely filed at the close of the government's case. Defendants did not call any witnesses, and rested their case. The jury subsequently found Defendants Safiedine and Fawaz guilty of conspiracy to defraud the United States. The Court indicated that it would take Defendants' motions for a judgment of acquittal under advisement, and permitted Defendants to remain free on bond.

## II. Governing Law

The statute under which Defendants were charged prohibits a conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose." 18 U.S.C. § 371. "To prove conspiracy, the government must establish: (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Blackwell*,

459 F.3d 739, 760 (6th Cir. 2006).

"The essence of a conspiracy is the agreement to commit the offense and not the commission of the substantive offense." *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007). "Proof of a formal agreement is unnecessary." *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). "'A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement, and conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan.'" *Blackwell*, 459 F.3d at 760 (quoting *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002)). Mere association with conspirators, however, will not suffice. *Hughes*, 505 F.3d at 588.

With respect to the second element, the government must prove that each defendant was aware of the essential object of the conspiracy. *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986). The defendant "'need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement.'" *Id.* (quoting *United States v. Cuni*, 689 F.2d 1353, 1356 (11th Cir. 1982)). "'The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.'" *Id.* (quoting *United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir. 1980)). "A defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." *Id.*

"It is a basic tenet of conspiracy law that an overt act in furtherance of a conspiracy need not be illegal itself." *United States v. Jerkins*, 871 F.2d 598, 602-03 (6th Cir. 1989). The overt act, however, "must accompany or follow the agreement and must be done in

furtherance of the object of the agreement." *Sandroff v. United States*, 174 F.2d 1014, 1018 (6th Cir. 1949). This element may be satisfied by the action of only a single conspirator. *Braverman v. United States*, 317 U.S. 49, 53, 63 S. Ct. 99, 101 (1942).

### III. Motions for Judgment of Acquittal

**A. Standard of Review**

If the defendant moves for a judgment of acquittal after the government concludes its case, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)) (emphasis in original). "Under the *Jackson v. Virginia* standard, a reviewing court does 'not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Id.* (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "'Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *Id.* (quoting *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004)).

**B. Agreement to Defraud the United States**

To establish the alleged agreement, the government introduced testimony concerning the sale of a gas station in late 1999. The purchaser, Ali Awada, testified that the sale price was $875,000. Trial Tr. vol. 1, 51, Sep. 7, 2011. Awada testified that in April 2000,

Safiedine and Fawaz met with him and asked him to sign a document stating that the sale price was $700,000. Trial Tr. vol. 1, 49-51. Safiedine allegedly stated that he wanted to show his "partner" that the gas station was sold for $700,000. Trial Tr. vol. 1, 51. Awada signed this document, but denied that the price was ever reduced. Trial Tr. vol. 1, 51. Tax returns for MTK & KLC indicated that the sale price was $700,000. Trial Tr. vol. 3, 115-16, Sep. 12, 2011. Awada testified that Safiedine and Fawaz later instructed him that if he was contacted by the government, to explain that part of the purchase price was used to pay for new fuel pumps. Trial Tr. vol. 1, 52-53. Awada apparently refused to comply, stating, "that's not [what] happened." Trial Tr. vol. 1, 53. Awada indicated that during another meeting with Defendants, Fawaz asked Awada to state that the price paid for the gas station was $700,000. Trial Tr. vol. 1, 53. Awada testified that Fawaz looked up at the ceiling while speaking in a loud voice, indicating that the conversation was being overheard by another person. This testimony, when viewed in a light favorable to the prosecution, suggests that Defendants shared a common plan to understate the sale price of the gas station in returns filed with the IRS. The government's theory was that this would result in the understatement of income. Awada's testimony, if believed, establishes that Safiedine and Fawaz attempted to secure his cooperation in reporting a transaction so as to conceal income. This evidence is sufficient to infer an agreement to conceal income from taxing authorities.

    The government also introduced testimony concerning a number of checks issued to JSC by Sunoco. These checks were "up-front consideration" paid as an incentive to enter into certain long-term supply agreements. Trial Tr. vol. 1, 154. Instead of being deposited

into JSC's bank account, several of these checks were negotiated to third parties. Mansour Kassabri, whose business performed construction services for JSC, testified that he received several of these checks. Trial Tr. vol. 2, 46-56, Sep. 8, 2011. According to Kassabri, Safiedine and Fawaz instructed him to deposit these checks into his business's bank account and then to write certain checks to third parties, including contractors that had performed services for JSC. Trial Tr. vol. 2, 56-58. On one occasion, Fawaz instructed Kassabri to deposit a Sunoco check and then write a check to Safiedine's brother, to whom Safiedine owed money. Trial Tr. vol. 2, 56. Allan Cohen, the accountant who prepared JSC's tax returns, testified that he would obtain the business's revenue figures based on reconciliations of JSC's bank statements and meetings with Defendants. Trial Tr. vol. 3, 85-88. Cohen further testified that he was unaware of any of the checks that were negotiated to third parties when he prepared JSC's tax returns. Trial Tr. vol. 3, 96-102.

    The testimony presented suggests that both Safiedine and Fawaz were aware that Sunoco checks were being negotiated to third parties and that these transactions would result in the checks being excluded from JSC's tax returns. It does not appear that either Safiedine or Fawaz informed Cohen about all of the Sunoco checks. Moreover, on one occasion, two checks of $125,000 each were negotiated to Kassabri, ostensibly for payment of $75,000 owed to Kassabri by JSC. If the true purpose of this arrangement were convenience, one of these checks would have sufficed. The fact that two checks were used and that Kassabri was directed to use the remaining funds to pay Safiedine's brother and a contractor for JSC indicates that another purpose accounted for the structure

of the transaction. Viewing this evidence in a light favorable to the prosecution, it was possible for the jury to rationally conclude that the true purpose of negotiating the checks to Kassabri's business was to avoid reporting the receipt of funds on JSC's tax returns. Because both Safiedine and Fawaz are alleged to have participated in this activity, Trial Tr. vol. 2, 56; Trial Tr. vol. 3, 161, the testimony suggests a common plan to conceal the receipt of funds. The government's theory of the case was that the negotiation of the Sunoco checks directly to third parties allowed JSC to avoid reporting revenue, leading to an understatement of its income. Again, the evidence is sufficient to establish at least a tacit agreement between Safiedine and Fawaz to obstruct the collection of income taxes by the IRS. The Court concludes that the evidence was sufficient for a rational trier of fact to find an agreement to defraud the United States.

## C. Knowledge and Intent to Join the Conspiracy

The evidence presented to the jury was also sufficient to infer that both Safiedine and Fawaz were aware of the conspiracy's objective and voluntarily participated in it. With respect to the sale of the gas station to Awada, it is difficult to imagine a legitimate reason for reporting a fictitious sale price to the IRS. The jury could certainly infer that this was intended to avoid income tax obligations, and that both Safiedine and Fawaz were aware of this result. The testimony at trial indicated that both Safiedine and Fawaz participated in efforts to conceal the true sale price. This is sufficient to find voluntary participation. As for the negotiation of checks to third parties, the jury could have concluded that given Safiedine and Fawaz's respective roles at JSC and their interactions with Cohen, they were aware of the process Cohen used to obtain information for JSC's tax returns. The jury

7

could have concluded that the decision to use third-party checks to pay expenses was calculated to ensure that JSC's receipt of these funds was hidden from the IRS. Because these actions directly supported the alleged conspiracy's objectives, a rational trier of fact could have found that the government satisfied its burden with respect to the knowledge and intent element.

### D. Overt Act in Furtherance of the Conspiracy

As noted above, the testimony presented at trial indicated that both Safiedine and Fawaz took actions directly furthering the alleged conspiracy. For example, Awada stated that both Safiedine and Fawaz asked him to sign a document falsifying the sale price of the gas station, and to tell investigators if he was contacted that part of the sale price was used to pay for new fuel pumps. Trial Tr. vol. 1, 49-51, 52-53. In light of the fact that the $700,000 sale price was reported to the IRS, this testimony is sufficient to establish an overt act taken in furtherance of a scheme to conceal income. Kassabri testified that both Safiedine and Fawaz instructed him to deposit Sunoco checks into his business's bank account and then to write checks to third parties. Trial Tr. vol. 2, 56-58. The negotiation of these checks to Kassabri, when coupled with Defendants' failure to otherwise disclose the checks to Cohen, ensured that JSC's receipt of funds from Sunoco was excluded from tax returns. Thus, the negotiation of these checks would also satisfy the overt act element of conspiracy.

### E. Conclusion

The Court concludes that the evidence presented at trial, when viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to find the essential

elements of conspiracy beyond a reasonable doubt. The Court accordingly denies Defendants' motions for a judgment of acquittal.

## IV. Motions for New Trial

### A. Standard of Review

A motion for a new trial is governed by Federal Rule of Criminal Procedure 33. The Rule provides that the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that 'the jury's verdict was against the manifest weight of the evidence.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006)). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Graham*, 125 F. App'x 624, 628 (6th Cir. 2005) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)). The district judge may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). "The defendant bears the burden of proving the need for a new trial and such motions should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

### B. Analysis

In support of his motion for a new trial, Safiedine first points to Cohen's allegedly inconsistent accounting treatment of the various checks received from Sunoco. He notes that some Sunoco checks were deposited into JSC's bank account and treated entirely as

9

income in the year received.  Trial. Tr. vol. 3, 94-95.  Defendants elicited testimony at trial indicating that the proper accounting treatment of such funds is to amortize them over five years, so as to recognize that a portion of the funds is earned each year throughout the five-year supply agreement.[1]  Trial Tr. vol. 3, 122-24, 138-39.  On cross-examination, Cohen testified that this could have resulted in the overpayment of tax in certain years.  Trial Tr. vol. 3, 138-39.  Assuming this is true, it still does not account for the checks that were never reported to the IRS.  By the terms of Cohen's engagement letter, JSC was required to disclose to Cohen all expenses and revenues.  Trial Tr. vol. 3, 77.  According to Cohen's testimony, he was never made aware of five checks from Sunoco to JSC totaling $565,000, as these checks were not deposited into JSC's bank accounts or otherwise reported to Cohen.  *See* Trial Tr. vol. 3, 97-102.  Cohen testified that as a result, these funds were never included in tax returns filed with the IRS.  Trial Tr. vol. 3, 97-102.  The jury could have concluded that the repeated failure to disclose the receipt of funds from Sunoco established a plan on the part of Defendants to conceal income from the IRS.  Cohen's accounting for the up-front consideration checks that he was aware of may have been flawed, but it does not excuse Defendants' alleged failure to disclose several other up-front consideration checks.  The Court is not persuaded that Cohen's accounting practices establish sufficient grounds for granting a new trial.

      Safiedine contends that the renegotiation of third-party checks does not amount to

---

[1] Cohen explained that in the instances where income was recorded entirely in the year in which the check was received, Defendants had explained to him that the check was not related to a multi-year contract.  Trial Tr. vol. 3, 95.

illegal activity.  That may be generally true, but the transactions in this case were allegedly undertaken in furtherance of a conspiracy to conceal income from the IRS.  Such actions could satisfy the overt act element of conspiracy, even though there is no indication that they would be illegal when standing alone.  *See Jerkins*, 871 F.2d at 602-03 (holding that "an overt act in furtherance of a conspiracy need not be illegal itself").

Safiedine argues that the facts surrounding the sale of the gas station to Awada fail to support a finding of conspiracy.  At trial, the defense advanced a theory that Awada had negotiated an actual sale price of $700,000, despite the stated price of $875,000.  The defense suggested that because Awada could finance the majority (but not all) of the stated price, he would have been able to obtain 100% financing of the actual price.  There was no evidence presented, however, indicating that this actually occurred.  The most that was established is that Awada could have obtained 100% financing if the price had actually been $700,000.  Trial Tr. vol. 1, 76-77.  Awada repeatedly denied that the purchase price was $700,000.

Of course, Awada's trial testimony was not uncontroverted, and Defendants raised a number of challenges to his credibility.  On cross-examination, Defendants' counsel questioned Awada about his tax returns, suggesting that he may not have been entirely truthful in his tax filings.  Trial Tr. vol. 1, 55-58.  Defendants highlighted inconsistencies in Awada's explanation for how he obtained the funds used to purchase the gas station.  Trial Tr. vol. 1, 59-62, 85-86.  Defendants suggested that Awada was biased because Safidine and Fawaz had at one point discovered that Awada's brother had overstated bottle returns.  Trial Tr. vol. 1, 90-91.  Defendants also elicited testimony from Kassabri

indicating that he had seen thousands of dollars' worth of illegal cigarettes in Awada's home. Trial Tr. vol. 2, 94. This evidence suggests that Awada's testimony was not credible, but Awada's testimony was not the only evidence of a conspiracy to understate taxable income. The government did not use Awada's testimony to establish the alleged scheme to understate income via the negotiation of Sunoco checks to third parties. The jury could have found Defendants guilty of conspiracy even if Awada's testimony was completely disregarded. The Court does not believe that the evidence weighs heavily against the jury's verdict.

## V. Conclusion

For reasons set forth above, the Court finds that sufficient evidence was presented at trial for the jury to conclude that the government satisfied its burden of proof with respect to each element of the charged conspiracy. The Court is also not persuaded that the jury's verdict was against the manifest weight of the evidence.

Accordingly,

**IT IS ORDERED** that Safiedine's motion for a judgment of acquittal, or in the alternative, for a new trial, is **DENIED**;

**IT IS FURTHER ORDERED** that Fawaz's motion for a judgment of acquittal, or in the alternative, for a new trial, is **DENIED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:  
Ben Gonek, Esq.  
James C. Thomas, Esq.  
Tiwana L. Wright, Esq.  
Mark W. Kotila, Esq.