UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                                                              Case No. 2:08-20148

D-1 ELSAYED KAZEM SAFIEDINE                     Honorable Patrick J. Duggan
a/k/a "Tom", and

D-2 MARY FAWAZ,

           Defendants.

_____/

**<u>OPINION AND ORDER RESENTENCING DEFENDANTS AND
IMPOSING RESTITUTION</u>**

On September 14, 2011, a jury convicted Defendants Mary Fawaz

("Fawaz") and Elsayed Kazem Safiedine ("Safiedine") of one count of conspiring

to defraud the United States in violation of 18 U.S.C. § 371.  The matter is now

before the Court for a determination of the amount of restitution owed by

Defendants, as well as for resentencing following the United States Court of

Appeals for the Sixth Circuit's decision vacating and remanding Defendants'

sentences: *United States v. Fawaz*, Nos. 12-2451, 12-2453, 2013 WL 5992091

(Nov. 12, 2013) (unpublished).

## I.  BACKGROUND

**A.      Conviction**

After a jury trial conducted during September 2011, Defendants were each convicted of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. As the basis for these convictions, the Government presented evidence at trial that Defendants conspired to obstruct and impede the assessment and collection of income taxes by the Internal Revenue Service ("IRS") by both concealing and underreporting income for four straight years on tax returns beginning with the return for the year 1998. This income, received in connection with the operation of various gas stations in southeast Michigan, was derived from two sources: (1) upfront consideration in the form of checks issued to JSC Corporation ("JSC") from Sunoco, Inc. ("Sunoco") and (2) the sale of a gas station on Joy Road ("Joy Road station").

Some background information regarding Safiedine's business entities is necessary to fully understand the events that transpired in this case. Safiedine exercised at least partial control over several entities in operating a network of gas stations. JSC was the operator of the gas stations (except for one operated by an entity called JLJ for liquor license purposes) and the lessee of properties actually owned by other Safiedine-related entities such as a Michigan partnership named MTK & KLC and MTK Family Investments ("MTK"). (10/22/13 Restitution Hr'g Tr. 65, ECF No. 128.) The concealment of the checks issued to JSC by Sunoco resulted in the filing of false tax returns for JSC. The understatement of taxable

2

income in connection with the sale of the Joy Road station caused false income tax returns to be filed on behalf of MTK & KLC.

Fawaz had no ownership interest in any of these entities; rather, she worked for Safiedine.

## B.    Sentence

After ruling on several post-trial motions, the Court sentenced Defendants on October 17, 2012.  The Court determined that the tax loss attributable to Defendants' conduct was $193,200, resulting in a base offense level of 16 for both Defendants.[1]  Having determined that both Defendants fell within Criminal History Category I, the corresponding advisory guidelines range for Defendants was 21-27

---

[1] In sentencing Defendants, the Court was guided by United States Sentencing Guideline § 2T1.9, entitled "Conspiracy to Impede, Impair, Obstruct, or Defeat Tax."  U.S.S.G. § 2T1.9 cmt. Background (2011) (noting that the guideline applies to 18 U.S.C. § 371).  This guideline provides that the base offense level is the greater of the offense level from § 2T1.1 or § 2T1.4 or 10.  *Id.* § 2T1.9(a).  Both § 2T1.1 and § 2T1.4 indicate that the base offense level is determined by the amount of "tax loss," which is defined as "the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)."  *Id.* § 2T1.1(c)(1).  In recognition that tax loss is not always readily ascertainable, Note (A) provides:

> If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income . . . plus 100% of any false credits claimed against tax, *unless a more accurate determination of the tax loss can be made*.

U.S.S.G. § 2T1.1(c)(1)(n.(A)) (emphasis added).  After assigning the appropriate amount of tax loss, a sentencing court then refers to the Tax Table in § 2T4.1 to locate the appropriate base offense level.

months.  Consideration of the factors set forth in 18 U.S.C. § 3553(a) led the Court to sentence Safiedine at the bottom of the guidelines range and to depart from the guidelines range when sentencing Fawaz.  Safiedine received a sentence of twenty-one months of imprisonment, (Safiedine J. 2, ECF No. 79), and Fawaz received a sentence of twelve months and one day of imprisonment, (Fawaz J. 2, ECF No. 80).  In addition to the term of imprisonment, the Court sentenced both Defendants to two years of supervised release and ordered restitution, although, the Court deferred its determination of the amount of restitution pending a calculation of the actual tax loss amount by the IRS.

The tax loss calculated by the Court at the original sentencing was based on $175,000 in unreported income from the sale of the Joy Road station and $565,000 in unreported income from the checks Sunoco issued to JSC.  The Court determined that the 20% capital gains rate should apply to unreported income related to the sale of the Joy Road station and that the default 28% tax rate from United States Sentencing Guideline § 2T1.1(c)(1)(n.(A)) should be applied to the unreported Sunoco payments.  After applying these rates, the Court determined that Defendants' conduct resulted in a tax loss of $193,200.  In reaching this figure, the Court declined Defendants' invitation to consider certain deductions Safiedine asserted he could have claimed to drastically offset the unreported income, had it been reported.  Specifically, at the sentencing hearing, Defendants presented the

4

testimony of Michael Washenko, a former IRS Revenue Agent, who testified that due to the availability of various tax deductions, the maximum tax loss was approximately $2,000.

The Court rejected Defendants' assertion that previously unclaimed deductions could be used to reduce gross income under § 2T1.1.  Despite recognizing the existence of a circuit split with respect to the issue – a circuit split that the Sixth Circuit had not yet "wade[d] into[,]" *United States v. Harris*, 433 F. App'x 383, 387 (6th Cir. 2011) – the Court concluded that "tax loss" for purposes of calculating a defendant's sentence should reflect the intended loss rather than the actual loss to the government.  The Court did, however, conclude that Defendants' previously unclaimed deductions were relevant to the restitution calculation because only actual loss to the victim (here, the United States Treasury) may be taken into account.

## C.    Post-Sentencing Proceedings and Developments

The Sixth Circuit escaped having to wade into the circuit split over whether taxpayers may use unclaimed deductions to reduce gross income under § 2T1.1. While Defendants' appeal of their sentences was pending but prior to oral argument, the United States Sentencing Commission submitted proposed amendments to the Guidelines to Congress; among those proposed amendments were alterations to the Application Notes in the Commentary for Guideline §

5

2T1.1.  78 Fed. Reg. 26,429.  The pertinent amendment, Amendment 774, became effective on November 1, 2013 and resolves the circuit split on whether unclaimed credits, deductions, and exemptions are properly considered in calculating tax loss in favor of allowing defendants to benefit from such unclaimed items provided that various criteria, discussed more fully below, are satisfied.  On November 12, 2013, the Sixth Circuit vacated Defendants' sentences as a result of the aforementioned amendment and remanded the matter to this Court to determine whether the amendment is retroactively applicable and, if so, to determine whether its application requires a modification of Defendants' sentences.  *Fawaz*, Nos. 12-2451, 12-2453, 2013 WL 5992091, at *6.

In the meantime, this Court concluded that it could not delegate the calculation of the amount of restitution to the IRS, relying on *United States v. Butler*, 297 F.3d 505 (6th Cir. 2002) and *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002).  The Court therefore held a restitution hearing on October 22 and 24, 2013.  At the hearing, the Government presented the testimony of IRS Revenue Agent Donald Kempf in aid of its position that JSC and MTK & KLC could not use the previously unreported deductions to offset the unreported income in calculating restitution.  Defendants introduced the testimony of Washenko, who previously testified at the 2012 sentencing hearing, to explain why the previously unclaimed deductions were appropriate.  Due to the parties' differing views on the

6

propriety of applying previously unclaimed deductions in the tax loss calculation,

the parties' figures on the amount owed to the United States are quite disparate.

The Government claims that it has demonstrated that the IRS is owed $297,232

(Gov't's Resent'g Mem. 34, ECF No. 135); Defendants contend that the actual loss

is $2,003 (Safiedine's Resent'g Mem. 4, ECF No. 137). The positions of the

parties have not changed since the restitution hearing.  It does bear mentioning,

however, that Fawaz has asked that the Court decline to hold her jointly and

severally liable for the tax loss.  (Fawaz's Resent'g Mem. 2, ECF No. 138.)

On December 9, 2013, the Sixth Circuit issued its mandate in this matter.

The following day, the Court held a resentencing hearing.  Prior to the hearing, the

Government stipulated that the amendment to United States Sentencing Guideline

§ 2T1.1 should be used for sentencing Defendants, only.[2]  At the conclusion of the

---

[2] As mentioned above, the Sixth Circuit vacated Defendants' sentences and remanded the matter to this Court in part to determine whether the amendment is retroactively applicable.  *United States v. Fawaz*, Nos. 12-2451, 12-2453, 2013 WL 5992091, at *6 (Nov. 12, 2013) (unpublished).  The Sixth Circuit "has consistently recognized that clarifying amendments may be applied retroactively to discern the Sentencing Commission's intent regarding the application of a pre-amendment guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007); *see also United States v. DeCarlo*, 434 F.3d 447, 458-59 (6th Cir. 2006) (finding it appropriate to consider a post-sentencing clarifying amendment when reviewing the defendant's sentence on appeal).  The Government's stipulation provides that for purposes *of this case*, the Court should deem the pertinent amendment clarifying and thus retroactively applicable.   As a result, the Court need not engage in a lengthy analysis regarding whether the amendment is clarifying (and therefore retroactive) or substantive (therefore rendering it only prospectively applicable).

7

December 10, 2013 hearing, the Court stated on the record that it was sentencing

Fawaz to the same sentence previously given (twelve months and one day,

resulting in time served), but reducing her period of supervised release from two

years to one year. The Court further stated that it was taking Safiedine's sentence

and restitution for both Defendants under advisement.

The Court has reconsidered its oral sentence of Fawaz and, for the reasons

discussed below, concludes that a lesser sentence is appropriate.

## II.   (RE)SENTENCING CALCULATION

### A.   Sentencing Framework

The Sixth Circuit summarized the method of calculating Defendants'

sentence, stating in part:

> Sentencing Guideline § 2T1.9 applies to violations of § 371.
> The base offense level is the greater of the offense level as determined
> by § 2T1.1 or § 2T1.4, or offense level 10. U.S.S.G. § 2T1.9(a).
> Guideline § 2T1.1 calculates the base offense level through specified
> monetary ranges in Guideline § 2T4.1. U.S.S.G. § 2T1.1(a). For the
> purposes of Guidelines § 2T1.1, "if the offense involved tax evasion
> or a fraudulent or false return, statement, or other document, the tax
> loss is the total amount of loss that was the object of the offense (i.e.,
> the loss that would have resulted had the offense been successfully
> completed)." U.S.S.G. § 2T1.1(c)(1). "If the offense involved filing
> a tax return in which gross income was underreported, the tax loss shall
> be treated as equal to 28% of the unreported gross income . . . unless a
> more accurate determination of the tax loss can be made." U.S.S.G. §
> 2T1.1(c)(1)(n.(A)).

*Fawaz*, Nos. 12-2451, 12-2453, 2013 WL 5992091, at *4 (brackets omitted).

8

The Sentencing Commission promulgated the amendment to § 2T1.1 in order to "reflect[ its] view that consideration of legitimate unclaimed credits, deductions, or exemptions, subject to certain limitations and exclusions, is most consistent with existing provisions regarding the calculation of tax loss in § 2T1.1." U.S.S.G. Manual supp. to app. X, amend. 774 at 42 (citations omitted). The amendment sets forth a tripartite framework for courts to utilize in calculating tax loss.  This framework creates three classes of unclaimed credits, deductions, or exemptions: (1) those that should always be taken into account; (2) those that should be taken into account in order to calculate a "reasonable estimate of the tax loss, but only to the extent certain conditions are met"; and (3) those that "shall not be considered by the court in any case." *Id.* at 40 (new Application Note 3). While standard deductions fall within the category that should always be taken into account, "payments to third parties made in a manner that encouraged or facilitated a separate violation of law (e.g. 'under the table' payments to employees or expenses incurred to obstruct justice)[]" must never be considered by courts.  *Id.*

In resentencing Defendants, this Court must focus on the second category. The new Application Note in § 2T1.1 provides the following guidance to courts considering such unclaimed deductions "needed to ensure a reasonable estimate of the tax loss": (1) the deductions must be "related to the tax offense and could have been claimed at the time the tax offense was committed;" (2) the deductions must

be "reasonably and practicably ascertainable;" and (3) "the defendant presents information to support the credit, deduction, or exemption sufficiently in advance of sentencing to provide an adequate opportunity to evaluate whether it has sufficient indicia of reliability to support its probable accuracy[.]" *Id*. Defendants bear the burden of establishing an entitlement to any deduction for purposes of calculating tax loss by a preponderance of the evidence. *Id*.

**B.     Application**

There are two sources of unreported income at issue in this case: payments from Sunoco and proceeds from the sale of the Joy Road station. The Court addresses the income derived from the Sunoco checks before moving on to the income received in connection with the Joy Road station transaction.

*1.     Sunoco Checks*

The Court finds that the unreported gross income from the concealment of the Sunoco checks amounts to $137,083.33. Having considered the facts and circumstances of the payments made to JSC by Sunoco, specifically the Loan Agreement, Note, and Mortgage executed as required in each of the respective supply agreements, the Court concludes that the funds were "loans" as opposed to "advance payments" and, as a result, the income from these checks may be ratably reported over the term of the corresponding supply agreements (five years). *See Westpac Pacific Food v. Comm'r of Internal Revenue*, 451 F.3d 970 (9th Cir.

10

2006); *Erickson Post Acquisition, Inc. v. Comm'r of Internal Revenue*, 86 T.C.M.
(CCH) 111 (2003). *But see Karns Prime & Fancy Food, Ltd. v. Comm'r of
Internal Revenue*, 494 F.3d 404 (3d Cir. 2007). The following summarizes how
each payment is treated.

At the outset, the Court notes that several payments are not included in the
tax loss calculation. Although Sunoco issued a total of ten checks to JSC in the
years 1998 through 2001, JSC reported two of those checks (Checks 5 and 7) on its
income tax returns and, therefore, only eight checks have been contested
throughout the course of these proceedings. (10/22/13 Restitution Hr'g Tr. 50-51,
ECF No. 128.) Of these eight checks, however, four others are excluded from the
Court's tax loss calculation. At the restitution hearing, the Government
acknowledged that the three checks issued in 1998 (Checks 1 - 3)[3] were reported
on the 1998 income tax returns of MTK (another Safiedine-related entity).
(10/24/13 Restitution Hr'g Tr. 13, ECF No. 127.) Although the Government had
included these payments in its calculation of tax loss at the initial sentencing, the
Court, finding that the income had been reported (albeit by another entity), did not.
(10/17/12 Sent'g Hr'g Tr. 60-63, 118-19, ECF No. 81.) The Government does not,
however, ask this Court to include the income from the three 1998 checks (Checks

---

[3] JSC received a total of $280,000 from three checks in 1998: (1) a check
dated October 9, 1998 in the amount of $100,000; (2) another dated October 13,
1998 for $80,000; and (3) a $100,000 check dated November 2, 1998.

1 - 3) in the present tax loss determination.  (Gov't's Resent'g Mem. 25, ECF No. 135.)  Finally, although the Court's original sentence included the tax loss from a Sunoco check dated January 4, 2000, the Government has excluded the $100,000 check (Check 6) from its revised tax loss calculations.  (*Id.* at 7, 15-16; *see also* 10/24/13 Restitution Hr'g Tr. 15-16, ECF No. 127.)

As a result of the aforementioned exclusions, unreported income from four checks remains at issue.  The chart below illustrates how those four checks, which are included in the Court's tax loss calculation and have been prorated over the years covered in the Indictment, are treated. [4]

| Check | Income 1998 | Income 1999 | Income 2000 | Income 2001 | Total Unreported |
|---|---|---|---|---|---|
| Check 4 Dated 6/3/1999 Amount: $125,000 | | $14,583.33 | $25,000 | $25,000 | $64,583.33 |
| Check 8 Dated 10/23/2000 Amount: $90,000 | | | $4,500 | $18,000 | $22,500 |
| Check 9 Dated 1/5/2001 Amount: $125,000 | | | | $25,000 | $25,000 |
| Check 10 Dated 1/5/2001 Amount: $125,000 | | | | $25,000 | $25,000 |
| **TOTAL UNREPORTED** | $0 | $14,583.33 | $29,500 | $93,000 | $137,083.33 |

---

[4] Because the Court finds that the income from the checks is pro ratable, *see supra*, some income derived from the checks only was reportable on income tax returns for years outside the Indictment.  As such, the Court concludes that the income should not be included in its tax loss calculation.

12

As illustrated, the total unreported income from the Sunoco checks is $137,083.33. Nevertheless, Defendants contend that this unreported income is offset almost completely by unclaimed deductions. This takes us to the purpose for which the Sixth Circuit remanded the matter.

The evidence introduced at trial reflects that Check 4 was negotiated to the Oscar Larson Company ("Oscar Larson"), a company that provides goods and services related to fueling systems, and given to Charles Burns, an Oscar Larson employee. Burns applied the $125,000 to outstanding invoices of various Safiedine-related entities. (9/12/11 Trial Tr. Vol. 3 166-68, ECF No. 61.) Of the $125,000, however, less than $25,000 was applied to JSC invoices. Further complicating the matter is that JSC did not own the properties on which Oscar Larson worked. (10/22/13 Restitution Hr'g Tr. 48-49, ECF No. 128 (referring to Trial Ex. 5-5).)

The evidence further established that Fawaz gave Mansour Kassabri Checks 8 through 10 for $90,000, $125,000 and $125,000, respectively. (9/8/11 Trial Tr. Vol. 2 46-62, ECF No. 60.) These payments were made to satisfy debt related to construction work Kassabri performed at gas stations owned by Safiedine-related entities other than JSC. (*Id.*) At Defendants' direction, Kassabri used the funds from these three checks to also pay Oscar Larson $75,000.00 and Mike Safiedine (Defendant Safiedine's brother) $100,000. (*Id*. at 56-67.)

13

Defendants argue, and Washenko testified, that because these Sunoco checks were used to pay JSC's ordinary and necessary business expenses and capital items, JSC is entitled to deduct and amortize/depreciate all but the $100,000 paid to Mike Safiedine.  The Court, however, concludes that Defendants have generally failed to meet their burden of demonstrating by a preponderance of the evidence that they are entitled to these reductions in income, as discussed in more detail below.  The one exception is a $4,273 deduction in connection to the $125,000 payment to Oscar Larson in 1999.[5]  The Court accepts Washenko's testimony that this amount of the payment from JSC to Oscar Larson was traceable to repair and maintenance expenses for JSC items.  (10/22/13 Restitution Hr'g Tr. 97-99, ECF No. 128.)

The amendment to § 2T1.1 allows the Court to account for unclaimed deductions in calculating tax loss *only if* the unclaimed deduction is both reasonably and practicably ascertainable.  In elucidating its reasons for the amendment, the Sentencing Commission explained that this requirement is designed to ensure that sentencing courts are not required "to make unnecessarily complex tax determinations[.]"  U.S.S.G. Manual supp. to app. X, amend. 774 at 42.  The Court finds support for Defendants' claim that JSC is entitled to deduct payments for improvements to properties owned by other Safiedine-related entities

---

[5] This reduces the unreported income in 1999 from $14,583.33 to $10,310.33.  *See* chart, *supra*.

14

as the lessee of those properties (under a theory of leasehold improvement).
(10/22/13 Restitution Hr'g Tr. 65-66, ECF No. 128 (Kempf agreeing that a lessee
of property paying for improvements to the property has a right to amortize the
payments on its tax returns)).[6]  Nevertheless, Defendants have failed to discharge
their burden of demonstrating that the unclaimed deductions were not already
claimed by another Safiedine-related entity.  Based on this Court's evaluation of
the evidence, it finds that such a factual determination is not reasonably and
practicably ascertainable.  For this reason as well, the Court concludes that
Defendants' previously unclaimed deductions should not be used in calculating the
tax loss for the purpose of sentencing.

Having concluded that the checks may be reported ratably but that
Defendants' previously unclaimed deductions are not properly considered, the
Court finds that the income from the Sunoco payments that should be used to
calculate the tax loss is $132,810.33.[7]  *See* note 5, *supra*.  Applying the 28%
default tax rate applied at the initial sentencing, the tax loss from the Sunoco
checks amounts to $37,186.89.

_____

[6] At the resentencing hearing conducted on December 10, 2013, the
Government acknowledged that there is a principle allowing tenants to take
deductions for capital improvements made to properties they do not own.

[7] The Court has not decided whether the $24,000 deduction claimed by
Defendants under 26 U.S.C. § 179 should be considered.  Having determined that
this deduction has no impact on Defendants' base offense level, the Court declines
to venture into the morass that is the United States Tax Code.

15

## 2. *Joy Road Station*

The Court now turns to the $175,000 in unreported income from the Joy Road station.[8]  Defendants contend, and Washenko testified, that additional expenses of sale and expenses which affected basis should be accounted for in calculating the tax loss related to this income.  Specifically, Washenko identified $9,444.02 in assorted expenses of sale and additional basis totaling $60,000 related to the $35,000 purchase of credit card reader pumps that the buyer of the Joy Road station requested and $25,000 in stolen coca-cola products.  (10/22/13 Restitution Hr'g Tr. 104-06, ECF No. 128.)  Again, at least with respect to the assorted expenses of sale and stolen coca-cola products, the Court finds that Defendants fail to demonstrate by a preponderance of the evidence that they are entitled to these deductions.  Expenses of sale were claimed by Allan Cohen, the accountant for the Safiedine-related entities (*see id*. at 85), and Defendants fail to show that the now-claimed expenses were not included.  Further, the unclaimed deductions related to the coca-cola products are neither reasonably and practicably ascertainable nor have Defendants satisfied their burden of demonstrating an entitlement for any such coca-cola-related deductions.  There is, however, sufficient evidence to support the unclaimed expenses associated with Safiedine's purchase of credit card

---

[8] The 1999 tax return of MTK and KLC reported a sale price of $700,000. Evidence adduced at trial, however, established that the actual sale price was $875,000.  (10/22/13 Restitution Hr'g Tr. 84, ECF No. 128.)

16

readers for the pumps at the Joy Road station as a condition of sale. Thus, the Court will deduct the $35,000 related to this cost from its tax loss calculation.

On the basis of the foregoing, the Court finds that the unreported income from the sale of the Joy Road station for purposes of calculating tax loss is $140,000. Applying the 1999 capital gains tax rate of 20%, the resulting tax loss is $28,000. Combining this amount with the $37,186.89 loss associated with the Sunoco payments results in a total tax loss of $65,186.89. The appropriate base offense level for purposes of resentencing therefore is 14. U.S.S.G. § 2T4.1. With Defendants' Criminal History Category I, the advisory guidelines range for both Defendants is 15-21 months.

## C.     Section 3553(a) Factors

Having calculated the advisory guidelines range, the Court now turns to 18 U.S.C. § 3553(a), which instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [set forth in the statute]." The statute also delineates various factors courts must consider in sentencing defendants.

At Defendants' initial sentencing, the Court sentenced Safiedine at the bottom of the guidelines range, concluding that this amount was sufficient, but not greater than necessary, to satisfy the purposes of sentencing. (10/17/12 Sent'g Hr'g Tr. 128, ECF No. 81.) Having concluded that Fawaz was less culpable for

17

the offense than Safiedine, the Court departed from the guidelines range in imposing Fawaz's sentence.  (*Id*. at 133.)  The Court now believes that a departure is warranted in sentencing both Defendants.

### 1.    *Safiedine*

With respect to Safiedine, there are two factors delineated in § 3553(a) that the Court finds relevant.  The first is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]"  18 U.S.C. § 3553(a)(1).  The second is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"  *Id*. § 3553(a)(6).

Safiedine has resided in Michigan for forty-four years and has been married to an American citizen for forty-one years.  He and his wife have four children and seven grandchildren, all of whom reside in the United States.  Despite Safiedine's lengthy stay in this country, he never become a citizen (he is a lawful permanent resident).  He therefore faces potential deportation to Lebanon as a result of his conviction.  Safiedine has not been to Lebanon since 1969.

Safiedine's counsel represented to the Court that his client is more likely to be deported if his sentence exceeds ten months.  (10/17/12 Sent'g Hr'g 120, ECF No. 81.)  He will be removed from the country where he has lived for his entire adult life, separated from his family, and returned to a country where he has not

18

been since he was seventeen years old.  A sentence exceeding ten months therefore is likely to lead to far harsher consequences for Safiedine than other defendants with similar records who have been found guilty of similar conduct.

Further, although a successful businessman, Safiedine has less than a high school education and has difficulty reading, writing, and understanding English. While these characteristics may not be relevant with respect to the failure to report the total income derived from the sale of the Joy Road station, they are significant when reflecting upon the nature and circumstances surrounding the failure to report the Sunoco payments.  The tax issues relevant to those payments, in this Court's view, are not simple.

The Court finds it significant that this is not a case of a taxpayer who failed to file income tax returns; Safiedine filed tax returns and paid substantial taxes into the United States Treasury.  The tax loss here, although not insignificant, can hardly be deemed overwhelming.  While this consideration is generally reflected in the base offense level used to calculate a defendant's guidelines range, in Safiedine's case, it is not reflected in the further penalty he will almost certainly face if the Court adheres to the guidelines range.  In short, the risk of deportation for the offense at hand "'take[s] it outside the Guidelines' 'heartland' and make[s] of it a special, or unusual, case.'" *Koon v. United States*, 518 U.S. 81, 95, 116 S.

Ct. 2035, 2045 (1996) (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993)).

Lastly, and with respect to the purposes of punishment as set forth in 18 U.S.C. § 3553(a)(2), the Court notes that the offense of conviction involved events beginning and ending over a decade ago. While this consideration, standing alone, does not necessarily mitigate the seriousness of the offense, there is nothing in the record that suggests that Safiedine has failed to accurately report the income from his businesses since 2002. Accordingly, there is little reason to believe that the public needs to be protected from Safiedine.

For these reasons, as well as the other considerations relevant to the sentencing determination, the Court concludes that a sentence of ten months is appropriate for Safiedine. This period of incarceration shall commence retroactively from March 25, 2013 – the date on which Safiedine reported to the Bureau of Prisons to serve his original sentence. (*See* 2/13/13 Order Extending Reporting Date, ECF No. 108.) This sentence shall be followed by two years of supervised release[9] with the same conditions previously imposed. (Safiedine J., ECF No. 79.)

---

[9] The term of supervised release for the offense of conviction is not to exceed three years. 18 U.S.C. § 3583(b)(2). As a Class D felony, the term of supervised release provided in the Guidelines is between one to three years. U.S.S.G. § 5D1.2(a)(2).

2.      *Fawaz*

This Court continues to believe that Fawaz's involvement in the crime is less than Safiedine's and that this factor justifies a variance from the advisory guidelines range.  Fawaz, however, does not face the same collateral consequence from her conviction (i.e., deportation).  Having considered its ruling on the record reimposing a sentence of twelve months and one day, the Court believes that a further reduction is proper.  The Court is therefore sentencing Fawaz to ten months (resulting in time served), followed by supervised release for a period of one year[10] with the same conditions as previously imposed.  (Fawaz J., ECF No. 80.)  As stated at the December 10, 2013 sentencing hearing following remand, this term of supervised release began when Fawaz was released from her original sentence.

## III.    RESTITUTION

**A.      Amount**

In the present case, restitution is being ordered pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, which requires courts to order restitution in cases involving "offenses against property" under Title 18, such as the conspiracy to defraud the United States conviction here.  18 U.S.C. § 3663A(a)(1); *see also* U.S.S.G. § 5E1.1 (providing that restitution shall be ordered).  While Defendants had the burden of demonstrating their entitlement to

---

[10] *See* note 9, *supra*.

deductions for purposes of calculating tax loss for sentencing, the Government bears the burden to prove its loss by a preponderance of the evidence for purposes of calculating restitution.  18 U.S.C. § 3664(e).  As discussed above, Defendants failed to demonstrate an entitlement to the previously unclaimed deductions they sought to benefit from to reduce the tax loss for sentencing.  The Government, however, has similarly failed to discharge its burden with respect to restitution.

The Court previously concluded that the Sunoco payments should have been prorated and that JSC could deduct the leasehold improvements made with those funds on properties it leased, even if owned by other Safiedine-related entities.  *See supra*.  Just as Defendants failed to present evidence that those related entities did not already claim the various deductions Washenko deemed proper (for example, deductions for depreciation), the Government has failed to present evidence that convinces the Court that those related entities in fact did deduct the costs of those improvements.[11]  For example, Kempf acknowledged during the restitution hearing that he could not tell whether the costs of the various capital improvements had

---

[11] Although both sides in this dispute contend that they have satisfied their respective burdens, the Court does not agree.  *Part* of the problem is that Safiedine's accountant, Allan Cohen, did not make sufficiently detailed depreciation schedules in connection with the tax returns he filed for the years 1998 through 2001.  As a result, both sides make certain assumptions regarding whether or not the assets were depreciated based upon whether the various entities filed taxes on an accrual or cash basis.  These assumptions, however, not only require the Court to engage in unduly complex tax determinations for sentencing purposes but they also lack the proper foundation for purposes of determining restitution.

been deducted or depreciated by the other Safiedine-related entities.  (10/22/13

Restitution Hr'g Tr. 52, ECF No. 128.)  Despite this acknowledgement, Kempf

testified that it was "a safe assumption" that Cohen had depreciated the

expenditures because "Cohen is a competent CPA[.]"  (*Id.*)  The Government

cannot possibly believe that such speculation satisfies the requisite burden of

proof.  This is particularly true in light of Cohen's testimony that he relied on the

Safiedine company ledgers to prepare tax returns and that the expenditures, which

were paid by negotiating checks that were never deposited into bank accounts,

were not on those books.  (9/12/11 Trial Tr. Vol. 3 68, 72, 94, 97, ECF No. 61;

10/22/13 Restitution Hr'g Tr. 81-82, ECF No. 128; *see also* 10/24/13 Restitution

Hr'g Tr. 9, ECF No. 127.)

Similarly, the Government has failed to convince the Court that MTK &

KLC could not take the deductions related to the sale of the Joy Road station that

Washenko applied in submitting amended tax returns for the years in question.

The Government has not shown by a preponderance of the evidence that the

expenses were in fact already included in the expenses previously claimed.

In light of the above, the Court concludes that the Government is entitled to

restitution in the amount of $2,003 "in accordance with section 3664."  18 U.S.C. §

3663A(d); *see also id.* § 3664(f)(1)(A) (requiring courts to "order restitution to

each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant[]").

## B.    Payment Schedule

As an initial matter, the Court notes that Fawaz has asked that the Court decline to hold her jointly and severally liable for the tax loss.  (Fawaz's Resent'g Mem. 2-3, ECF No. 138.)  Fawaz argues that she should not be ordered to pay any restitution because "she did not profit from the alleged *Klein* [c]onspiracy nor was she instrumental in its alleged success."  (*Id.* at 2.)

"'In cases involving multiple defendants, [18 U.S.C.] § 3664(h) explicitly gives district courts discretion as to whether they should apply joint and several liability or whether liability should be apportioned among the defendants based on their economic circumstances and their respective contributions to the victims' losses.'"  *United States v. Bogart*, 576 F.3d 565, 574 (6th Cir. 2009) (quoting *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008)).  In formulating Fawaz's original sentence, the Court departed from the advisory guidelines range because it found that she was less culpable than Safiedine.  Although "[i]n the context of a conspiracy, it is clear that a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators[,]"  *Bogart*, 576 F.3d at 576 (quoting *United States v. Collins*, 209 F.3d 1, 3 (1st Cir. 1999), Fawaz's argument

is not without merit.  Accordingly, the Court will grant Fawaz's request and decline to order that she pay any portion of the restitution amount.

With respect to Safiedine, the MVRA "provides that district courts must evaluate a defendant's ability to pay when establishing the manner and schedule of restitution payments."  *Bogart*, 576 F.3d at 574 (citing 18 U.S.C. § 3664(f)(2)). Specifically, the MVRA directs district courts to consider the following factors in crafting the restitution payment schedule: (1) "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;" (2) "projected earnings and other income of the defendant;" and (3) "any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2)(A)-(C).

In the Presentence Investigation Report prepared on November 15, 2011 and revised on January 9, 2012, the Probation Department determined that the financial information provided by Safiedine did not appear to present a complete financial picture and explained this determination by indicating that Safiedine's expenses far exceed his reported income.  *See* 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant.").  As a result, Probation indicated that Safiedine may have the ability to make nominal periodic restitution payments.  It should be noted, however, that Probation was operating under the

25

assumption that the restitution figure would be $285,600 and that the Court would be imposing a fine of $60,000.[12]  Because the restitution figure is lower than Probation anticipated, the Court orders Safiedine to pay $2,003, plus interest, in restitution within sixty (60) days of the entry of this Opinion and Order.[13]

## IV.   CONCLUSION

As the parties have repeatedly acknowledged at the various hearings conducted in effort to ascertain the tax loss caused by Defendants' conduct, this is anything but a typical case.  Accurately reconstructing tax loss in a hypothetical universe is anything but simple, particularly where certain expenses have not been verified by receipts (here, the Court refers to the payments that went to Kassabri) and where the tax returns as filed did not contain detailed depreciation schedules.  As is often the case in the law, the result here is governed by which party bears the burden of proof on a particular issue.  For sentencing, the amendment to § 2T1.1 clearly provides that Defendants shoulder the burden of proving that they are

---

[12] The maximum fine that may be lawfully imposed by statute is $250,000. 18 U.S.C. § 3571(b).  The fine range provided in the Guidelines is $4,000 to $40,000.  U.S.S.G. § 5E1.2(c)(3).  At the original sentencing, the Court declined to impose fines, finding that Defendants did not have the financial means to pay.  As the amended judgment issued in connection with this Opinion and Order will reflect, Fawaz will not be assessed a fine, however, the Court will assess a $6,000 fine against Safiedine.

[13] Although the Court originally waived restitution interest, this was based on its conclusion that Safiedine did not have the means to pay the interest on the suggested restitution amount.  Given that the restitution amount has decreased significantly, the Court declines to waive interest at this time.

entitled to retroactively claim previously unclaimed deductions to reduce the tax loss.  They have not met that burden.  For restitution, the burden belongs to the Government.  The Government has similarly failed to discharge its burden.  While the Court's tax loss calculations therefore differ for purposes of sentencing and restitution, this result is not untenable.  The Sentencing Commission's amendment to § 2T1.1 does not require a showing of actual tax loss; rather, the guideline requires only a "reasonable estimate of the tax loss."  U.S.S.G. Manual supp. to app. X, amend. 774 at 42.  The MVRA, however, makes clear that only actual loss may be taken into account in determining the restitution portion of a defendant's punishment.  18 U.S.C. § 3664(f)(1)(A).  Given these varied standards, it is plainly reasonable that the appropriate loss amount for purposes of restitution may well be lower than the loss amount for purposes of sentencing.

## V.   ORDER

For the reasons stated above, **FAWAZ** is sentenced to a prison term of  **TEN (10) MONTHS** (resulting in time served), followed by supervised release for a period of **ONE (1) YEAR** commencing on the date of her release from her initial sentence.  The conditions of supervised release imposed at the original sentencing shall remain unchanged.  Fawaz is **NOT** required to make restitution nor shall the Court assess any fine against Fawaz.  If Fawaz has not already paid the mandatory

27

special assessment of **$100**, *see* 18 U.S.C. § 3013, the Court orders that she now do so.

The Court sentences **SAFIEDINE** to a prison term of **TEN (10) MONTHS** with credit for the time he has served to date, followed by supervised release for a period of **TWO (2) YEARS** with the same conditions imposed at the original sentencing. Safiedine **SHALL** timely remit the **$6,000** fine the Court has assessed and, if he has not already done so, he shall also remit the mandatory **$100** special assessment. Further, Safideine **SHALL** make restitution in the amount of **$2,003 PLUS INTEREST** to the United States Treasury (listing the payee as the Internal Revenue Service) within **SIXTY (60) DAYS** of the entry of this Opinion and Order. The payments **SHALL** be provided in the first instance to the Clerk's Office in the United States District Court for the Eastern District of Michigan, which will then forward the payment(s) to the following office which the IRS established to receive restitution payments in federal criminal cases:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

**IT IS SO ORDERED.**

DATED: December 19, 2013

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

28

**Copies to**:
Tiwana L. Wright, Esq.
Ben M. Gonek, Esq.
Robert E. Forrest, Esq.
James C. Thomas, Esq.